IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SCOTT TAYLOR,

        Plaintiff,

  v.

CAROLYN COLVIN,
Commissioner of Social Security,

        Defendant.
                                       /

No. C 15-01535 WHA

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this social security appeal, plaintiff appeals the denial of disability benefits. For the reasons stated below, plaintiff's motion for summary judgment is **GRANTED**, and defendant's motion for summary judgment is **DENIED**.

**STATEMENT**

**1.  PROCEDURAL HISTORY.**

Plaintiff Scott Taylor applied for disability insurance benefits in April 2013, alleging he was unable to work due to post-traumatic stress disorder, anxiety, migraines, Kienböck's disease, herniated and bulged discs in his lower back and neck, cervical lordosis, sleep apnea, temporomandibular joint disorder, sinusitis, rhinitis, avascular necrosis of the wrist, and

1  synovitis of the posterior (AR 100).  Taylor is insured through December 31, 2017.[*]

2  His application was denied both initially and upon reconsideration (AR 126, 135).

3       In September 2014, Taylor had a hearing before Administrative Law Judge Judson

4  Scott (AR 31–99), who found that plaintiff was not disabled (AR 8–24).  In February 2015,

5  the appeals council denied Taylor's request for administrative review (AR 1).  Taylor filed the

6  instant action in April 2015, seeking judicial review pursuant to 42 U.S.C. 405(g).  The parties

7  now make cross-motions for summary judgment.  This order follows full briefing.

### 2.  CLAIMANT TESTIMONY.

9       At the hearing before Judge Scott, Taylor testified that he had neck and back issues,

10  left wrist and ankle problems, sleep apnea, herniated discs, migraines, and PTSD — all of

11  which limited his ability to work.  Taylor described some of his physical limitations, including

12  wrist, hand, and knee problems.  Before Taylor moved to California, an orthopedic surgeon at

13  the Hospital of the University of Pennsylvania (HUP) recommended transplanting a piece of his

14  knee into his wrist.  Taylor testified, however, that his anxiety prevented him from undergoing

15  general anesthesia.  He stated that after he retired from the Navy, he worked as a bed-bug

16  hunter.  But, Taylor's physical impairments forced him to stop working altogether in 2013.

17  Taylor also stated that although he has a continuous positive airway pressure (CPAP) machine

18  for his sleep apnea, he often removes it unconsciously in the middle of the night.

19       Despite psychological treatment and attendance at group therapy sessions every week,

20  Taylor did not feel he was getting better.  He moved into his RV after his wife asked him to

21  move out.  Taylor also said that he struggled to socialize and became irritable on bad days.

### 3.  MEDICAL EVIDENCE.

23       Judge Scott summarized the medical evidence in his decision (AR 17–20).  This order

24  will also briefly summarize the over two thousand pages of medical records.  Taylor has been

25  treated for a myriad of physical ailments.  Kienböck's disease, a condition that interrupts the

---

[*] A claimant must be "insured" under the Social Security program before disability benefits can be disbursed. Insured means that the claimant has worked for the necessary amount of time and paid Social Security taxes.

2

blood supply to a small bone in the wrist, is well documented in Taylor's records. A letter from Dr. Scott Levin, an orthopedic surgeon at HUP, diagnosed Taylor with "significant Kienbock's [sic] probably stage III" in August 2012. In the letter, Dr. Levin recommended surgery as medically necessary to correct the resulting discomfort and decreased range of motion (AR 1500). Taylor has not obtained the surgery due to his anxiety. Another orthopedic surgeon at HUP, Dr. Ernest Gentchos, also recommended surgery for Taylor's left foot in October 2012. At an exam, Taylor labored to complete more than four left "heel rises." Dr. Gentchos noted tenderness of the posterior tibial tendon, medial malleolus, and tarsal navicular bone (AR 2119). As to Taylor's back pain, diagnostic imaging from August 2011 revealed "loss of cervical lordosis," shallow centered disc protrusion, and bulging annulus (AR 2097–98). Notes throughout Taylor's medical record indicate that he consistently complained of back pain. But, as noted by Judge Scott, Taylor reported no back pain in June 2014 (AR 2284). Finally, the record documents Taylor's sleep apnea and chronic migraines. Positive sleep study findings suggest that Taylor's sleep apnea can be treated with a CPAP machine (AR 2099–110). Taylor admitted that the machine provides some relief when he does not inadvertently remove it in his sleep (AR 49–50). Despite taking his prescribed migraine medication, Taylor testified that he continues to suffer three to five migraines per week.

        The medical records also trace Taylor's ongoing mental health issues. Taylor's treatment includes psychotropic medication and group therapy. Doctors repeatedly diagnosed Taylor with anxiety disorder and PTSD. Taylor has also been diagnosed with adjustment disorder and cognitive disorder. Two of Taylor's treating physicians completed mental health impairment questionnaires in July 2014. The physicians opined that Taylor could not meet various competitive standards and faced various limitations. One physician stated that Taylor had experienced three episodes of decompensation (an exacerbation or temporary increase in symptoms and loss of adaptive functioning lasting at least two weeks) (Exh. 39). The other stated that a minimal increase in mental demands or change in environment would cause Taylor to decompensate (Exh. 38).

**ANALYSIS**

**1.   LEGAL STANDARD.**

A decision denying disability benefits must be upheld if it is supported by substantial evidence and free of legal error. Substantial evidence is "more than a mere scintilla, but less than a preponderance." It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." The Court must "consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from" the ALJ's conclusion. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Thus, where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014).

There is a five-step evaluation for determining disability. 20 C.F.R. 404.1520. *First*, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. *Second*, the ALJ evaluates whether the claimant has a medically severe impairment or combination of impairments. *Third*, the ALJ considers whether the impairment or combination of impairments meets or equals any listed impairment in the regulations. *Fourth*, the ALJ assesses whether the claimant is capable of performing his past relevant work based on his residual functional capacity. *Fifth*, the ALJ examines whether the claimant can perform any other jobs in the national economy. "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Garrison*, 759 F.3d at 1011.

**2.   THE ALJ'S FIVE-STEP ANALYSIS.**

Before conducting the five-step analysis, Judge Scott found that Taylor met the insured status requirements of the Social Security Act through December 2017. Judge Scott then found at step one that Taylor had not engaged in substantial gainful activity since the alleged onset date of his disability (AR 13).

At step two, Judge Scott found that the following constituted severe impairments: Kienböck's disease or aseptic necrosis in the left wrist, left foot fallen arch and developing pes

4

1 planus, obstructive sleep apnea, lumbar spine and cervical spine degenerative disc disease,
2 anxiety disorder not otherwise specified, depressive disorder not otherwise specified, and
3 migraines. He also found that while various doctors had diagnosed Taylor with other conditions
4 including PTSD, adjustment disorder, and cognitive disorder, those impairments were all
5 "non-severe." Taylor's allegations of personality disorder, tinnitus, and hearing disorder were
6 found not medically determinable because no objective medical evidence supported these
7 allegations.

8 At step three of the analysis, Judge Scott found that none of Taylor's impairments or
9 combination of impairments met or equaled any of the impairments listed in the regulations
10 (AR 14). To meet or equal a listed impairment, the claimant must show a "marked" limitation
11 (more than moderate but less than extreme) or episodes of decompensation. Judge Scott found
12 that Taylor was only moderately limited. He also found, based on a nonexamining physician's
13 testimony, that there was no objective medical evidence indicating any episodes of
14 decompensation. Thus, Judge Scott concluded that Taylor's impairments did not meet or
15 medically equal any of the listed impairments.

16 Judge Scott began his analysis at step four by determining Taylor's residual functional
17 capacity. He found that Taylor could perform medium work, with several limitations.
18 For instance, Judge Scott determined that Taylor could only stand or walk for two hours
19 per eight-hour day and could not be exposed to unprotected heights or hazardous moving
20 machinery. Based on this residual functional capacity, Judge Scott determined that Taylor was
21 not capable of performing any of his past work (AR 15–23).

22 Finally, at step five, Judge Scott determined that Taylor was capable of performing work
23 in the national economy, and therefore, was not disabled. Taylor now argues that Judge Scott
24 erred because he rejected the opinions of two treating physicians and discounted a Veteran's
25 Affairs disability determination without providing sufficient reasons. Consequently, Taylor
26 contends that Judge Scott should have found that Taylor's PTSD was severe at step two and

should have found Taylor disabled at step three based on his depression, anxiety, and PTSD. This order agrees.

### 3.     THE ALJ ERRED BY REJECTING THE OPINIONS OF TREATING PHYSICIANS.

Taylor first argues that Judge Scott failed to provide sufficient reasons for rejecting the findings and opinions of two treating physicians. In doing so, Taylor claims that Judge Scott erred at step two of his analysis. Our court of appeals has distinguished between three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, the "opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." When a treating doctor's opinion is contradicted by another doctor, the ALJ may reject the opinion. But, the ALJ must provide "specific and legitimate reasons" for doing so "supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of a treating physician." *Lester*, 81 F.3d at 831. Rather, the ALJ must make findings that include "a detailed and thorough summary of the facts and conflicting clinical evidence" along with his interpretation thereof. *Reddick*, 157 F.3d at 725.

Here, Dr. Jerry Boriskin, one of Taylor's treating physicians, opined in a mental impairment questionnaire that Taylor could not meet various competitive standards, was markedly limited in social functioning, extremely limited in maintaining concentration, persistence, and pace, and had experienced three episodes of decompensation. Another treating physician, Dr. Christine Leyba reached similar conclusions. She found that Taylor was mostly unable to meet competitive standards and predicted that even a minimal increase in mental demands or change in the environment would cause Taylor to decompensate (AR 2129–40).

Judge Scott rejected the opinions of Drs. Leyba and Boriskin and instead relied on the contradictory opinion of Dr. John Simonds, the nonexamining psychiatrist. Before rejecting the opinions of Taylor's treating physicians, Judge Scott summarized Taylor's testimony at the hearing. Specifically, Taylor's testimony that he had "bad days," attended group therapy

1   sessions every week, did not feel that he was getting better, and had a difficult time socializing
2   and performing usual activities of daily living.  Judge Scott next reviewed Dr. Simonds'
3   interpretation of Taylor's medical records.  Dr. Simonds testified that Taylor's global
4   assessment functioning scores throughout 2011 and 2012 were in the moderate to mild range.
5   He also testified that the 2013 records showed Taylor was mildly anxious and that his mood
6   was generally "normal" (AR 18).

7   Dr. Simonds determined that the mental impairment questionnaires completed by
8   Drs. Leyba and Boriskin in July 2014 were not supported by objective medical evidence.
9   Judge Scott agreed.  Turning to the objective medical evidence, Judge Scott found that the
10  records indicated that Taylor was normal, cooperative, friendly, and appropriate, with only mild
11  anxiety and depression.  Taylor reported some difficulties, however, in February and June of
12  2014.  His treatment records indicated that after separating from his wife his mood was
13  dysthymic, anxious, and tearful (AR 19–20).  Despite conflicting clinical evidence, Judge Scott
14  ultimately rejected the opinions of Drs. Leyba and Boriskin.  He gave their opinions no weight
15  because Dr. Simonds found that the record did not support the conclusions in the mental
16  impairment questionnaires (AR 22).  This did not constitute a specific, legitimate reason,
17  supported by substantial evidence, for rejecting the opinions of Taylor's treating physicians.

18  The Commissioner argues that Judge Scott could rely entirely on Dr. Simonds'
19  conclusion that Drs. Leyba and Boriskin's evaluations were unsupported by evidence.  Not so.
20  An ALJ "must set forth his own interpretations and explain why they, rather than the [treating
21  physician's], are correct."  *Reddick*, 157 F.3d at 725.  Here, Judge Scott merely agreed with the
22  interpretations and conclusions of a nonexamining physician.  Although Judge Scott considered
23  Taylor's medical records, he relied on Dr. Simonds' interpretation of those records almost
24  entirely.  He did not provide his own interpretation of the conflicting clinical evidence.
25  A nonexamining physician's conclusions do not constitute substantial evidence.  As such,
26  substantial evidence did not support Judge Scott's decision to reject the opinions of Taylor's

7

treating physicians. Judge Scott therefore erred in rejecting the opinions of Drs. Leyba and Boriskin.

Judge Scott's failure to consider the treating physicians' opinions was harmful legal error because it caused him to ignore their conclusions about the severity of Taylor's PTSD. Thus, Judge Scott erred at step two of his analysis.

Taylor also contends that Judge Scott erred at step three because he failed to provide sufficient reasons for rejecting the opinions of Drs. Leyba and Boriskin. The ALJ must determine at step three whether the claimant's impairments or combination of impairments meet or medically equal any listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ does this by determining whether the "paragraph B" criteria of each listed impairment are met. Under paragraph B, the claimant's impairments must result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.

Dr. Boriskin found that Taylor was markedly limited in maintaining social functioning and extremely limited in maintaining concentration, persistence, and pace (AR 2135–40). Thus, Dr. Boriskin's questionnaire identified two limitations that satisfied the paragraph B criteria. Moreover, Dr. Boriskin noted that Taylor had experienced three episodes of decompensation and Dr. Leyba found a likelihood of decompensation. Accordingly, the findings of Taylor's treating physicians indicate that Taylor's PTSD and anxiety related impairments met or equaled the paragraph B criteria for anxiety related disorders. 20 C.F.R. § 12.06, Pt. 404, Subpt. P, App. 1. Judge Scott therefore erred at step three of his analysis by rejecting the opinions of Taylor's treating physicians.

### 4. THE ALJ ERRED BY AFFORDING THE VA DETERMINATION LITTLE WEIGHT.

Taylor next argues that Judge Scott did not afford the November 2013 VA disability determination the proper weight. Taylor contends that as a result, Judge Scott erred at step two

8

of his analysis. Ordinarily, an ALJ must give a VA determination great weight "because of the marked similarity between [the VA and Social Security Administration] disability programs." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). But, "[b]ecause the VA and SSA criteria for determining disability are not identical," an ALJ may give less weight to a VA determination when he provides "persuasive, specific, valid reasons for doing so that are supported by the record." *Ibid.*

Here, Judge Scott considered the VA's determination. He specifically referenced the determination in his evaluation of the severity of Taylor's impairments at step two. He accorded it little weight, however, in his analysis of Taylor's residual functional capacity. Judge Scott explained that he did so for two reasons: (1) because the VA disability standards differ from the SSA disability standards and (2) because the VA did not have the benefit of more recent medical treatment and the opinions of two medical experts who reviewed the entire record (AR 21).

In *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009), our court of appeals found that the ALJ ran afoul of *McCartey* insofar as she "distinguished the VA's disability rating on the general ground that the VA and SSA disability inquiries are different." So too here. Judge Scott erred to the extent that he relied on the difference between the VA and SSA disability determinations.

In *Valentine*, the court went on to find that "[t]he ALJ was justified in rejecting the VA's disability rating on the basis that she had evidence the VA did not." *Ibid.* The ALJ there rejected the VA determination because it relied on a treating physician's opinion that the ALJ had properly rejected. *Valentine* held that this was a persuasive, specific, and valid reason supported by the record for according little weight to the VA determination. That is not the case here. Taylor's VA determination did *not* rely on a properly rejected medical opinion. Rather, Judge Scott gave the VA determination little weight because of the testimony of two nonexamining physicians, Dr. Simonds and Dr. Frank Barnes. Neither the difference between the VA and SSA disability standards nor testimony by nonexamining physicians constitute a

9

persuasive, specific, valid reason for discounting Taylor's VA determination. Judge Scott did not provide a persuasive, specific, valid reason for discounting the VA determination, supported by the record. Thus, Judge Scott erred in giving little weight to the VA determination.

The Commissioner argues that the VA determination does not find that Taylor is unable to work. As such, she contends that Judge Scott did not err by affording the VA determination little weight. The Commissioner emphasizes that the October 2014 VA disability determination denied Taylor's individual unemployability claim. This argument is inapposite. The VA is only permitted to make a finding of unemployability when the disability rating is less than one hundred percent. 38 C.F.R. § 4.16. The 2014 VA determination designated Taylor as housebound and rated him as one hundred percent disabled by PTSD. Thus, the VA was not permitted to find Taylor unemployable.

The Commissioner also contends that the testimony of the vocational expert, George Meyers, constituted new and relevant evidence, specific to Judge Scott's determination, which was not available to the VA. This argument fails. Our court of appeals has noted that it is "wary of speculating about the basis of the ALJ's conclusion — especially when his opinion indicates that the conclusion may have been based exclusively upon an improper reason." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). Here, Judge Scott did not articulate an acceptable reason for affording the VA determination little weight. This order refuses to speculate about whether Judge Scott considered Meyers' testimony in affording the VA determination little weight. Thus, this order finds that Judge Scott erred in affording Taylor's 2013 VA determination little weight.

Taylor also argues that Judge Scott erred at step five of his analysis because he did not afford the November 2013 VA determination the proper weight. This order need not reach this argument. Once Drs. Leyba and Boriskin's assessments and the VA determination are properly credited, no issues remain as to whether Taylor is disabled. The only item remaining is the payment of benefits.

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is **GRANTED**, and defendant's motion for summary judgment is **DENIED**. The decision of the ALJ is **REVERSED**, and the case is hereby **REMANDED** for the sole purpose of awarding benefits.

**IT IS SO ORDERED.**

Dated: July 25, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE